UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
MORNINGSIDE SUPERMARKET CORP., d/b/a/ :          05 CIV. 9950(DLC)
MET FOOD,                            :
                                     :          OPINION & ORDER
                  Plaintiff,         :
                                     :
         -v-                         :
                                     :
NEW YORK STATE DEPARTMENT OF HEALTH; :
PATRICIA HESS, Director, Division of :
Nutrition; WILLIAM F. RYAN COMMUNITY :
HEALTH CENTER,                       :
                                     :
                  Defendants.        :
                                     :
------------------------------------ X

Appearances:

For Plaintiff:
Roger J. Bernstein
331 Madison Avenue, 15th Floor
New York, NY 10017

For State Defendants:
Roy A. Esnard
Assistant Attorney General
Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271

For Defendant William F. Ryan Community
Health Center:
Jeffrey C. Thrope
Alon M. Markowitz
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036


DENISE COTE, District Judge:

       Plaintiff Morningside Supermarket Corporation

("Morningside") initiated this action with an application for a

preliminary injunction requiring defendants to reauthorize its

participation as a vendor in a federally funded food assistance

program.  Defendants opposed the preliminary injunction and
cross-moved to dismiss the complaint.  In an earlier Opinion and
Order, issued March 17, 2006, plaintiff's motion for a
preliminary injunction was denied.  See Morningside Supermarket
Corp. v. N.Y. State Dep't of Health, No. 05 Civ. 9950 (DLC), 2006
WL 680469 (S.D.N.Y. Mar. 17, 2006).  This Opinion addresses
defendants' motion to dismiss the complaint.  That motion is
granted in part.


Background

    The following facts are taken from the complaint.
Morningside is the owner of a retail food store located in a low-
income neighborhood in Manhattan.  In 1992, Morningside began
participation as a vendor in the Special Supplemental Nutrition
Program for Woman, Infants and Children (the "WIC program").  Its
participation has been automatically renewed every year since.

    The WIC program provides vouchers to eligible women who are
pregnant or have young children that may be used at authorized
food stores ("vendors") to purchase certain foodstuffs.  See 7
C.F.R. § 246.2 (defining a "vendor" as "a business entity
operating one or more stores authorized by the State agency to
provide authorized supplemental foods to participants under a
retail food delivery system").  Aid recipients typically make
additional purchases of non-WIC products at the same stores at
which they redeem their vouchers.  Deauthorization from
participation as a vendor threatens a significant portion of

Morningside's business because customers who receive WIC benefits will choose to patronize other stores where they can make their WIC and non-WIC purchases together.

Defendant New York State Department of Health (the "DOH") is the state agency charged with administering the WIC program on behalf of the State of New York. Defendant Patricia Hess is the Director of the Division of Nutrition within the DOH. Hess manages and oversees the WIC program. The third defendant, the William F. Ryan Community Health Center (the "Ryan Center"), is a non-profit organization that administers the WIC program in parts of Manhattan on behalf of the DOH. See 7 C.F.R. § 246.3(f) (explaining under "delegation to local agency" that "[t]he local agency shall provide Program benefits to participants").

On January 10, 2005, Morningside applied for reauthorization as a WIC vendor. The Ryan Center informed Morningside by letter on February 22, 2005 that its request for reauthorization was denied because Morningside had been previously disqualified from the WIC program or had abused the WIC program or another government-sponsored program. Defendants subsequently communicated to Morningside that they refused to reauthorize its participation as a vendor because 172 Food Corporation, which has a shareholder and officer in common with Morningside, had been previously disqualified from the program, and that disqualification was imputed to Morningside. For its part, however, Morningside has not violated, and has never been alleged to have violated, any WIC rules or regulations.

Morningside filed this action shortly after its application was denied. The complaint seeks relief under four causes of action. The first claims a violation of Morningside's right to equal protection guaranteed by the Fourteenth Amendment and requests injunctive relief; the second seeks a declaration that defendants have violated federal regulations governing the WIC program as well as a corrective injunction; the third requests relief under Article 78 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 7801 <u>et. seq.</u>; and the fourth seeks specific performance of a contract between Morningside and the DOH and Hess (the "State defendants").

<u>Discussion</u>

"[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) (citation omitted); <u>see also</u> <u>Twombly v. Bell Atl. Corp.</u>, 425 F.3d 99, 106 (2d Cir. 2005) (explaining that dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (citation omitted)). Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff is required only to give fair notice of

what the claim is and the grounds upon which it rests."
Leibowitz v. Cornell Univ., ___ F.3d ___, 2006 WL 1046212, at *3
(2d Cir. Apr. 21, 2006).

When considering a motion to dismiss, a trial court must
"limit [its] consideration to facts stated in the complaint" or
attached or incorporated documents, Nechis v. Oxford Health
Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005), and "must accept as
true all the factual allegations in the complaint and draw all
reasonable inferences in [the] plaintiff['s] favor." In re
Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 384 (2d Cir.
2005) (citation omitted). The court's duty "is not to weigh the
evidence that might be presented at trial but merely to determine
whether the complaint itself is legally sufficient." Chosun
Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d
Cir. 2005) (citation omitted).


A. Eleventh Amendment Immunity

State defendants raise a preliminary jurisdictional issue
when they invoke the Eleventh Amendment as a bar to Morningside's
claims.[1] Their immunity argument appears to be limited to the

---

[1] The Ryan Center submitted no independent briefing,
choosing instead simply to "adopt[] and incorporate[] by
reference" the State defendants' arguments. Assuming that the
Ryan Center intended to adopt the State defendants' Eleventh
Amendment argument as well, the foundation for its immunity is
woefully lacking. State defendants presented no argument
explaining why the Ryan Center should be "treated as an arm of
the State partaking of the State's Eleventh Amendment immunity."
Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274,
280 (1977). Nor did the State defendants (or the Ryan Center)
respond to Morningside's assertion that the Ryan Center lacked

third and fourth causes of action, which are brought under state
law; the federal causes of action are argued on the merits.  A
federal court is not bound, however, by the scope of arguments
relating to sovereign immunity.  Instead, a court may assure
itself that the Eleventh Amendment does not deprive it of
jurisdiction before addressing the merits of a suit against a
state or state officer.  See Atl. Healthcare Benefits Trust v.
Googins, 2 F.3d 1, 4 (2d Cir. 1993) (holding that Eleventh
Amendment immunity may be raised sua sponte because it affects
subject matter jurisdiction).

A state's Eleventh Amendment protection from suit extends to
its agencies and departments.  Pennhurst State School & Hosp. v.
Halderman, 465 U.S. 89, 100 (1984).  This is no less true for the
DOH than for other state departments.  See, e.g., Miner v. N.Y.
State Dep't of Health, No. 02 Civ. 3180 (MBM), 2004 WL 1152491,
at *3 (S.D.N.Y. May 24, 2004).  Morningside's claim for an
injunction against the DOH under the Fourteenth Amendment "must
be dismissed because it does not follow the requirement,
established in Ex Parte Young, that a plaintiff seeking
prospective relief from the state must name as defendant a state
official rather than the state or a state agency directly."
Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 32 (2d
Cir. 1991).  The second cause of action is similarly improper, as
a state may not be sued under Section 1983.  See Will v. Mich.
Dep't of State Police, 491 U.S. 58, 71 (1989).  And finally, the

immunity as a private agency under contract with the State.

6

third and fourth causes of action are dismissed against DOH because "the Eleventh Amendment bars . . . consideration of purely State law claims" brought against states. <u>Concourse Rehabilitation & Nursing Ctr., Inc. v. DeBuono</u>, 179 F.3d 38, 44 (2d Cir. 1999); <u>see also</u> <u>Westside Mothers v. Haveman</u>, 289 F.3d 852, 861 (6th Cir. 2002) (noting that sovereign immunity protects a state from "suit[s] seeking to compel a state to specific performance of a contract") (fourth cause of action); <u>Allen v. Cuomo</u>, 100 F.3d 253, 260 (2d Cir. 1996) ("The scope of authority of a state agency is a question of state law and not within the jurisdiction of federal courts.") (third cause of action).

The Supreme Court established in <u>Ex Parte Young</u>, 209 U.S. 123 (1908), though, that the analysis differs when the defendant is not a state itself but a state officer sued in her official capacity. <u>Id.</u> at 155-56. Claims brought under federal law against these officials are barred by the Eleventh Amendment to the extent that the relief sought is retrospective. <u>K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health</u>, 189 F.3d 273, 278 (2d Cir. 1999). "The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law." <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 287 (2d Cir. 2003); <u>see also</u> <u>Ex Parte Young</u>, 209 U.S. at 155-56. Section 1983 has been read similarly: "[S]tate officials cannot be sued in their official capacities for retrospective relief under Section 1983. Nonetheless, state

officials can be subject to suit in their official capacities for
injunctive or other prospective relief." Huminski v. Corsones,
396 F.3d 53, 70 (2d Cir. 2005) (citing Will, 491 U.S. at 71 &
n.10). Morningside's first two causes of action, brought under
the Constitution and Section 1983, seek only prospective
injunctive relief. Because Hess is sued in this case in her
official capacity, she is a proper defendant to these to claims.

The nature of the relief makes no difference, though, when
state officials are sued under state law. See Bragg v. W. Va.
Coal Ass'n, 248 F.3d 275, 293 (4th Cir. 2001) ("[S]overeign
immunity . . . bars a court's grant of any type of relief,
whether retrospective or prospective, based upon a State
official's violation of State law."). Because there is "no
greater intrusion on state sovereignty than when a federal court
instructs state officials on how to conform their conduct to
state law," Morningside's third cause of action seeking relief
against Hess under New York state procedural law is dismissed.
Allen, 100 F.3d at 260 (citation omitted). And because "the
Eleventh Amendment provides absolute immunity in federal court to
state officials for suits alleging breach of contract under state
law," the fourth cause of action seeking a decree of specific
performance against Hess is dismissed as well. Garcia v.
Lemaster, 439 F.3d 1215, 1219 n.7 (10th Cir. 2006); see also In
re Ayers, 123 U.S. 443 (1887) (holding a claim for specific
performance of a contract by state officials barred by the
state's sovereign immunity); In re Ellet, 254 F.3d 1135, 1145

(9th Cir. 2001) (reading <u>Ayers</u> "for the proposition that the
functional equivalent of an action for specific performance
against a State is . . . constitutionally impermissible");
<u>Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee</u>
<u>Tribe of Indians of Fla.</u>, 177 F.3d 1212, 1226 (11th Cir. 1999)
("It is well established that <u>Ex Parte Young</u> does not permit
individual officers of a sovereign to be sued when the relief
requested would, in effect, require the sovereign's specific
performance of a contract."); <u>Dover Elevator Co. v. Ark. State</u>
<u>Univ.</u>, 64 F.3d 442, 447 (8th Cir. 1995); <u>Ad Hoc Comm. on Judicial</u>
<u>Admin. v. Massachusetts</u>, 488 F.2d 1241, 1243 (1st Cir. 1973).

To summarize, New York's sovereign immunity deprives this
Court of jurisdiction over all of Morningside's claims against
the DOH. Morningside's first two causes of action against Hess,
brought under federal law, are not barred by the Eleventh
Amendment, but its third and fourth claims, brought under state
law, are. Jurisdiction remains over all causes of action against
the Ryan Center, which has not demonstrated that it is an arm of
the State of New York.


B. Equal Protection

A plaintiff lacking protected status based on, for example,
race, religion, or the exercise of constitutionally protected
rights, may rely on "two related, yet different, equal protection
arguments" to state a claim under the Fourteenth Amendment. <u>Cobb</u>
<u>v. Pozzi</u>, 363 F.3d 89, 109 (2d Cir. 2004). First, following the

Court of Appeals's opinion in LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980), a plaintiff may claim a denial of equal protection as a result of having been subjected to "selective prosecution." Cobb, 363 F.3d at 109.  Alternatively, a plaintiff may "assert a 'class of one' equal protection claim based on the Supreme Court's recent decision in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)." Cobb, 363 F.3d at 109.[2]

To prevail on a claim of selective enforcement under LeClair, a plaintiff must "show both (1) that [she was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. at 110 (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).  The "murky corner of equal protection law," LeClair, 627 F.2d at 608, that creates a cause of action for selective enforcement "provides protection from adverse governmental action that is not motivated by legitimate governmental objectives."

---

[2] While the Second Circuit has repeatedly described these as distinct legal claims with seemingly different elements of proof, see, e.g., Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); Cobb, 363 F.3d at 109, African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 363-64 (2d Cir. 2002), it has just as many times deferred the question of whether there is in fact any distinction to be made between them.  See, e.g., Bizzarro, 394 F.3d at 88; DeMuria v. Hawkes, 328 F.3d 704, 707 n.2 (2d Cir. 2003); Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001).  This Opinion follows the example set out in Bizzarro and Cobb and considers selective enforcement and class of one claims separately.

Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005) (citation
omitted). Thus, "[i]f the motivation to punish is to secure
compliance with agency objectives," there is no constitutional
violation. Id. A successful plaintiff must establish that the
governmental actor was motivated by "reasons wholly unrelated to
any legitimate state objective," id. (citation omitted), a burden
few are able to carry. See id. at 86 (observing that the Second
Circuit has "rarely found a constitutional violation").
Nonetheless, "if the complaint states a claim it must withstand
the Rule 12(b)(6) motion to dismiss," "regardless of the
likelihood of success." Tele-Communications of Key West, Inc. v.
United States, 757 F.2d 1330, 1340 (D.C. Cir. 1985).

A "class of one claim" relies on a "slightly different
theor[y]." Bizzarro, 394 F.3d at 86. As the Supreme Court
explained in Olech, a "class of one" may bring an equal
protection claim "where the plaintiff alleges that she has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment." Olech, 528 U.S. at 564. Unlike a selective
enforcement claim, an "Olech-based equal protection claim is not
dependent on [a plaintiff's] ability to prove that [she was]
disciplined for an impermissible reason." Cobb, 363 F.3d at 110.
Rather, a "class of one" claim under Olech "focuses on whether
the official's conduct was rationally related to the
accomplishment of the work of their agency." Bizzarro, 394 F.3d
at 88-89. A plaintiff must still establish, though, that the

11

irrational disparate treatment was intentional, that is, that the
defendants "knew" they were treating the plaintiff differently
from everyone else.  Giordano v. City of New York, 274 F.3d 740,
751 (2d Cir. 2001).

The complaint invokes language suggesting an intent to
advance both theories of equal protection.  Morningside alleges
that "[d]efendants' decision to decline to reauthorize [its
participation in the WIC program] is irrational and wholly
arbitrary" and that they "have not declined to re-authorize any
other WIC vendor based on a past qualification."  It then claims
"[a]lternatively" that "defendants selectively terminated
Morningside in bad faith."  But whether Morningside succeeds in
stating a claim under either theory depends on its "factual
allegations, not . . . the legal claims set out in [its]
pleadings."  Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir.
2005).

Recitation of the phrases "selective termination" and "bad
faith" notwithstanding, the complaint does not actually allege
selective enforcement based on malice or bad faith intent to
injure.  Morningside does not claim that the denial of
reauthorization was motivated by something wholly unrelated to a
legitimate governmental objective.  To the contrary, the
complaint acknowledges the defendants' position that the
disqualification of a vendor with common ownership was
attributable to Morningside.  The complaint does not assert that
the disqualification of the related vendor never occurred, or

12

that the disqualification or relationship between the two stores had been fabricated to cover a malicious intent to injure Morningside.

Rather, it appears that what leads Morningside to characterize the defendants' actions as taken "in bad faith" is not the defendants' subjective motivation but rather the fact that, in Morningside's view, the denial of reauthorization based on the disqualification of a related entity was beyond their regulatory authority. Morningside alleges in its first cause of action that the defendants "do not have any guidelines that require[d] them to decline to reauthorize" its participation as a WIC vendor, and that there was an "absence of regulatory basis for doing so." Even assuming these allegations to be true, they are beside the point. While the Equal Protection Clause protects against governmental action motivated by impermissible considerations, "the mere assertion of such a constitutional claim does not convert the federal procedure into a plenary administrative review." <u>Levi v. Univ. of Tex. at San Antonio</u>, 840 F.2d 277, 280 (5th Cir. 1988); <u>see also</u> <u>Bizzarro</u>, 394 F.3d at 88 ("The pertinent question in a constitutional claim is not whether the defendants correctly understood the rules they were enforcing."). Because Morningside has not alleged that the defendants' action was motivated by reasons wholly unrelated to legitimate state objectives, it has failed to plead a selective prosecution claim.

The class of one claim stands on a different footing.

Construed under the liberal standard of Rule 8, the complaint's allegations roughly track the elements of a class of one claim under the Equal Protection Clause of the Fourteenth Amendment.[3] See DeMuria, 328 F.3d at 707 (vacating dismissal of equal protection claim).  Defendants are therefore provided with notice of the nature of Morningside's claim and the grounds upon which it rests.  The first cause of action against Hess and the Ryan Center, while hardly a model of good pleading, is legally sufficient and cannot be dismissed.

C. Violation of WIC regulations

Morningside's second cause of action alleges that the defendants' refusal to reauthorize Morningside as a WIC vendor violated two federal regulations that govern state administration of the WIC program, specifically 7 C.F.R. § 246.12(g)(3) and 7 C.F.R. § 246.12(*l*)(1)(8) (together, the "Regulations").  The relevant portions of the Regulations are set forth in the

_____

[3] Morningside alleges that the Ryan Center acts "on behalf of DOH, [and] as [an] agent of DOH" and that the "defendants," presumably including the Ryan Center, "are acting and have acted under the color of" New York law.  It is unnecessary to consider whether these allegations are sufficient to state a claim against the Ryan Center under the Fourteenth Amendment, because the Ryan Center has not raised this argument in its briefing papers.  See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n.18 (1982) ("[A]lthough we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action."); The Civil Rights Cases, 109 U.S. 3, 11 (1883) ("It is State action of a particular character that is prohibited.  Individual invasion of individual rights is not the subject-matter of the amendment.")

margin.[4]

Although it is not clear from the complaint whether Morningside brings its second cause of action directly under the Regulations or under 42 U.S.C. § 1983 to enforce rights granted by the Regulations, the briefing papers make clear that the second cause of action is brought pursuant to Section 1983. Section 1983, though, does not provide any substantive rights, Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979); it "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002). Morningside claims to locate its rights in the Regulations.

Whether a regulation, standing alone, can create a right enforceable through Section 1983 is an open question in this Circuit. See King v. Town of Hempstead, 161 F.3d 112, 115 (2d Cir. 1998) (declining to decide the question). One district court, adopting the position of a majority of the other circuits that have addressed the question, recently concluded that a regulation cannot confer an enforceable right "in the absence of any implicit recognition of an enforceable right in the regulation's enforcing statute." In re NYAHSA Litig., 318 F.

_____

[4] "The State agency must develop and implement criteria to select stores for authorization. The State agency must apply its selection criteria consistently throughout its jurisdiction." 7 C.F.R. § 246.12(g)(3).
"[T]he State agency may not use nonrenewal of the vendor agreement as an alternative to disqualification." 7 C.F.R. § 246.12(l)(1)(viii).

Supp. 2d 30, 40 (N.D.N.Y. 2004), aff'd sub nom. New York Ass'n of Homes and Servs. for the Aging, Inc. v. DeBuono, ___F.3d ___, 2006 WL 888377 (2d Cir. Apr. 6, 2006) (per curiam).  The Second Circuit affirmed the district court's judgment "for the reasons set forth in the district court's well-reasoned Memorandum Decision and Order," but the brief per curiam opinion does not make clear whether it adopted this portion of the district court's analysis.  See DeBuono, 2006 WL 888377, at *1 (noting the district court's holdings respecting the Eleventh Amendment and the Medicaid statute, but omitting mention of the holding on the regulatory claim).  It may be true that the Supreme Court's recent opinions in Alexander v. Sandoval, 532 U.S. 275 (2001), and Gonzaga, "taken together, compel the conclusion . . . that agency regulations cannot independently create rights enforceable through § 1983," Save Our Valley v. Sound Transit, 335 F.3d 932, 939 (9th Cir. 2003),[5] but in the absence of more explicit guidance from the Second Circuit on this difficult and deeply important question, this Opinion rests on an alternate ground.

Assuming, against the weight of legal authority, that a regulation could in some circumstances independently give rise to a right enforceable through Section 1983, the relevant inquiry would be identical to that which governs the identification of statutorily conferred rights.  See Save Our Valley, 335 F.3d at 961 (Berzon, J., dissenting) ("Gonzaga now guides the inquiry

_____

[5] See also Sandoval, 532 U.S. at 291 ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

16

whether a particular provision creates a right. . . . [T]he
inquiry the Court there enunciated is no less appropriate for
agency regulations."). A court must ask, then, whether the
Secretary of Agriculture "intended to confer individual rights
upon a class of beneficiaries" through the issuance of the
Regulations. Gonzaga, 536 U.S. at 285.

In Gonzaga, the Supreme Court held that "the statute at
issue in the case did not create new rights enforceable under §
1983 because it (1) contained no rights-creating language; (2)
had an aggregate, not individual, focus; and (3) was spending
legislation that focused primarily on the government's allocation
of resources." Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury,
___F.3d ___, 2006 WL 945655, at *11 (2d Cir. Apr. 12, 2006).
Whether language is rights-creating is in turn determined by
reference to factors described in the Court's prior decision in
Blessing v. Freestone, 520 U.S. 329 (1997). See Loyal Tire, 2006
WL 945655, at *11. First, "Congress must have intended that the
provision in question benefit the plaintiff"; second, the right
asserted by the plaintiff must not be "so vague and amorphous
that its enforcement would strain judicial competence"; and
third, "the statute must unambiguously impose a binding
obligation on the States." Loyal Tire, 2006 WL 945655, at *11
(citation omitted). The inquiry is rigorous: only "an
unambiguously conferred right [will] support a cause of action

brought under § 1983." Gonzaga, 536 U.S. at 283.[6]

Neither of the Regulations relied upon by Morningside contains any of the "'rights-creating' language critical to showing the requisite . . . intent to create new rights." Gonzaga, 536 U.S. at 287. "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" Id. at 284 (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 692 n.11 (1979)). Yet these Regulations are phrased not in terms of any benefit conferred upon vendors, but rather in terms of imperatives that state agencies must follow in their selection of vendors. Thus, "[u]nlike the individually focused terminology of Titles VI and IX ('No person shall . . . be subjected to discrimination'), [the Regulations] speak only" to the State agency that administers the program. Id.; see 7 C.F.R. § 246.12(g)(3) ("The State agency must . . . . The State agency must . . . . The state agency may . . . . The vendor selection criteria must . . . ."); id. § 246.12(l)(1)(viii)("The State agency may not . . . . In addition the State agency may not . . . ."). Like statutes, regulations "that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Sandoval, 532 U.S. at 289; see also Cannon, 441 U.S. at 690-92 ("There would be far less reason to infer a

_____

[6] Thus, while Blessing outlines three factors for a court to consider, a court need not proceed beyond the first. See Loyal Tire, 2006 WL 945655, at *12 (basing its conclusion solely on the first factor and providing no analysis under the second or third).

18

private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds . . . .").[7]

The language of the Regulations reflects an aggregate, rather than an individual focus. See Loyal Tire, 2006 WL 945655, at *12 ("[B]ecause the statue focuses on the regulated actors (state and local authorities), it has an aggregate, rather than an individual focus."). Indeed, their function is to "set[] forth design and operational requirements for food delivery systems" that will provide food aid to program beneficiaries. 7 C.F.R. § 246.12(a). This focus on the "policy and practice" that State agencies must follow in their administration of the WIC program is inconsistent with an intent to create individual rights enforceable under Section 1983. Gonzaga, 536 U.S. at 288; see also id. at 290.

Even if the Regulations could be read to create a right,

_____

[7] Morningside does not rely on, or even mention, Section 246.18, which governs administrative review of State agency actions. This regulation provides for differing levels of administrative review depending on the nature of the state's decision. Section 246.18(f) requires a State agency to inform a vendor "that it may be able to pursue judicial review of the decision," but this provision does not reflect an attempt to create a right enforceable in federal court. Indeed, the Food and Nutrition Service advised in its announcement of the regulation that "the availability and type of judicial review of State agency adverse actions is a matter of State law and may vary depending on the action taken." Special Supplemental Nutrition Program for Women, Infants and Children (WIC): Food Delivery Systems, 65 Fed. Reg. 83,248, 83,271 (Dec. 29, 2000); see also Special Supplemental Nutrition Program for Women, Infants and Children (WIC): Food Delivery Systems, 64 Fed. Reg. 32,308, 32,332 (June 16, 1999)(proposed rule; same).

Morningside would only be in a position to enforce that right under Section 1983 if the right specifically ran to its benefit. See Loyal Tire, 2006 WL 945655, at *11 ("Congress must have intended that the provision in question benefit the plaintiff."). The congressionally declared purpose of the WIC program is to provide for the distribution of "supplemental foods and nutrition education" to "pregnant, postpartum and breastfeeding women, infants, and young children." 42 U.S.C. § 1786(a). The regulations promulgated by the Secretary of Agriculture share that purpose. See 7 C.F.R. § 246.1. Thus, "[t]o the extent that any private remedy might be implicit in the statute," or made explicit in the implementing regulations, "it would presumably be limited to one running in favor of this group." Banco de Ponce v. Hinsdale Supermarket Corp., 663 F. Supp. 813, 817-18 (S.D.N.Y. 1987). Nothing in the Regulations suggests an intent to include vendors among the group specifically identified by Congress as the intended beneficiaries of the WIC program. See id. (finding no private right of action for vendor under WIC statute); see also Alexander v. Polk, 750 F.2d 250, 259 (3d Cir. 1984) (finding, pre-Sandoval and Gonzaga, that WIC regulations "created an enforceable right on behalf of WIC aid recipients to be informed of the availability of fair hearings").[8]

---

[8] In South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot., 274 F.3d 771 (3d Cir. 2001), the Third Circuit explained that its previous decision in Alexander v. Polk did not support the argument that a regulation alone could create a right enforceable under Section 1983, for "Alexander did not involve a circumstance in which the regulations attempted to create a federal right beyond any that Congress intended to create in

The Regulations relied upon by Morningside fall far short of creating an unambiguously conferred right. There is no individually focused, rights-creating language suggestive of an intent to benefit vendors; the Regulations have an aggregate focus; and the Regulations implement a federal spending program designed to distribute food and nutrition information to at-risk women and children. Because the text and structure of the Regulations provide no indication that the Secretary of Agriculture intended to confer new rights upon WIC vendors, Morningside cannot bring suit under Section 1983 to force defendants to comply with them. Cf. Gonzaga, 536 U.S. at 286 (finding no right enforceable under § 1983 where "text and structure of a statute provide no indication that Congress intends to create new individual rights").[9] The second cause of

_____

enacting the statute." South Camden Citizens in Action, 274 F.3d at 783-84. The Court of Appeals further noted that it had "decided Alexander in 1984, well before the Supreme Court refined its analysis to focus directly on Congress'[s] intent to create enforceable rights." Id. at 784.

[9] Morningside did not argue that it sought to enforce rights created by Congress in the WIC statute. See Morningside Reply Brief at 9 ("Morningside's second cause of action is based on the defendants' violations of the governing WIC regulations."). If the statute did create such rights, a plaintiff would be able to enforce them through a claim based on the implementing regulations. See Harris v. James, 127 F.3d 993, 1009 (11th Cir. 1997) ("[S]o long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute–'in conjunction with the regulation'–may create a federal right as further defined by the regulation."); see also Save Our Valley, 335 F.3d at 941 (same); South Camden Citizens in Action, 274 F.3d at 786-90 (same); cf. Sandoval, 532 U.S. 284 ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well."). But an attempt by Morningside to

21

action is dismissed in its entirety.


D. Article 78

In the third cause of action, Morningside claims that "[u]nder Article 78 of the New York Civil Procedure Law and Rules, plaintiff is entitled to an order annulling the DOH decision of September 23, 2005 for an error of law, and as arbitrary and capricious" and also "an order directing defendants to re-authorize plaintiff as a WIC vendor."  The explicit reference to the DOH order suggests that Morningside seeks relief under this cause of action solely against the DOH.  For reasons described above, however, neither State defendant is a proper defendant in this cause of action.

To the extent that the third cause of action also seeks relief against the Ryan Center, it could be maintained only through the exercise of the Court's supplemental jurisdiction. It is doubtful, though, that claims under Article 78 are even amenable to a federal district court's supplemental jurisdiction. Three district courts in this Circuit have recently concluded that Article 78 claims brought in federal court "must be dismissed for lack of subject matter jurisdiction, as New York

_____

enforce the WIC statute would be subject to substantially the same analysis as its present attempt to enforce the Regulations. 42 U.S.C. § 1786 contains no language that could fairly be read to confer an enforceable right on a vendor.  See Banco de Ponce, 663 F. Supp. at 818 (noting that no provision in the statute "ascribes to [vendors] specific rights"); cf. id. (finding "nothing to show that Congress contemplated granting a direct remedy in federal court to a retailer complaining of the state agency").

State has not empowered the federal courts to consider such claims." Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005); see also Beckwith v. Erie County Water Auth., 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006); Cartagena v. City of New York, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003).[10]

Even assuming that a federal district court could properly exercise supplemental jurisdiction over an Article 78 claim, the court has "discretion under 28 U.S.C. § 1367(c) to determine whether to hear th[ose] claims." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 309 (2d Cir. 2004). Section 1367 provides that a court "may decline to exercise supplemental jurisdiction" if there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c), (c)(4).

The very nature of an Article 78 proceeding presents such compelling reasons. "An Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in [federal district court] in a number of ways." Lucchese v. Carboni, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998). It is a "purely state procedural remedy," Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999), "designed to accommodate to the state court system." Herrmann v.

---

[10] One of these courts later accepted supplemental jurisdiction over a plaintiff's Article 78 claim after the defendants withdrew their jurisdictional objection and "unequivocally agreed, in the unusual circumstances of th[e] case, to the submission of the Article 78 claim" to the federal court. Cartagena v. City of New York, 345 F. Supp. 2d 414, 426 (S.D.N.Y. 2004). The court did not, however, question the propriety of its previous ruling. See id.

Brooklyn Law Sch., 432 F. Supp. 236, 240 (E.D.N.Y. 1976).

Because accepting supplemental jurisdiction over such claims

requires a federal court to "usurp the statutory authority

bestowed upon the New York state courts," Adler v. Pataki, 204 F.

Supp. 2d 384, 396 (N.D.N.Y. 2002) (citation omitted), "federal

courts are loath to exercise jurisdiction over Article 78

claims." Birmingham v. Ogden, 70 F. Supp. 2d 353, 372 (S.D.N.Y.

1999).

Only two cases were located by the Court in which a federal

court exercised jurisdiction over an Article 78 claim.[11]  In one,

the Second Circuit affirmed the district court's exercise of

jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a),

as "necessary to protect the integrity" of a consent decree

previously entered by the district court.  Yonkers Racing Corp.

v. City of Yonkers, 858 F.2d 855, 865 (2d Cir. 1988).  In the

other, a district court distinguished (but did not question) its

own previous ruling that it "did not have the power to exercise

jurisdiction over the Article 78 claim" after defendants

consented to jurisdiction.  Cartagena, 345 F. Supp. 2d at 426.

Both courts acknowledged that the cases presented exceptional

circumstances.  See Yonkers, 858 F.2d at 864 ("[W]e agree with

the district court that this is indeed an exceptional case.");

Cartagena, 345 F. Supp. 2d at 426 (noting the "unusual

---

[11] The briefing on this issue was exceptionally bad.
Morningside never ventured beyond its conclusory assertion that
this claim was properly before the Court under its supplemental
jurisdiction.

circumstances of this case").

Federal courts in New York agree that "Article 78 proceedings were designed for the state courts, and are best suited to adjudication there." <u>Lucchese</u>, 22 F. Supp. 2d at 258. Moreover, "state law does not permit [these] proceedings to be brought in federal court." <u>Beckwith</u>, 413 F. Supp. 2d at 227. These are compelling reasons to decline supplemental jurisdiction over Morningside's third cause of action, and there is nothing exceptional about Morningside's claim that would justify deviation from the well-reasoned and essentially unanimous position of New York district courts on this issue.

F. Breach of Contract

Finally, Morningside's fourth cause of action seeks specific performance of an alleged contract between the supermarket and the State defendants. For the reasons given above, this claim is barred by the Eleventh Amendment against both State defendants. Because the Ryan Center is not alleged to be a party to the contract, this claim may be dismissed in its entirety.

Conclusion

For the reasons described above, Morningside's second, third, and fourth causes of action are dismissed in their entirety. The first cause of action is dismissed against the DOH for lack of jurisdiction, but will be permitted to proceed against Hess and the Ryan Center as a class of one claim under

the Equal Protection Clause.

SO ORDERED:

Dated:     New York, New York
           May 18, 2006

_____
            DENISE COTE
      United States District Judge